An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-637

Filed 1 July 2026

Edgecombe County, No. 21CR050186-320

STATE OF NORTH CAROLINA

v.

DARRELL JERROD HILL

Appeal by defendant from judgment entered 11 April 2024 by Judge Jeffery B. Foster in Edgecombe County Superior Court. Heard in the Court of Appeals 14 January 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General Marc D. Brunton, for the State.*
>
> *Mark L. Hayes for defendant.*

FREEMAN, Judge.

Darrell Jerrod Hill, defendant, appeals from judgment entered upon a jury's verdict of guilty on the charge of first-degree murder. On appeal, defendant argues the trial court erred by sustaining the State's objection to a statement made by defense counsel during closing arguments. After careful review, we conclude defendant received a fair trial free from error.

## I. Factual and Procedural Background

On 8 November 2021, a grand jury indicted defendant with first-degree murder. On 11 April 2024, defendant was convicted of first-degree murder in Superior Court, Edgecombe County. The evidence presented at trial tended to show the following:

On 4 February 2021, Markelius Chambers was shot and killed in the front yard of his family's home. The shooter approached by a grey Chevrolet Impala vehicle, rolled down the window, shot the victim in front of several witnesses—the victim's two sisters and nephew—and drove away. A second car followed close behind.

At trial, these three eyewitnesses testified defendant was the shooter. The victim's two sisters also testified defendant's girlfriend was the driver of the second car. An officer testified the defendant's girlfriend had told officers a silver Chevrolet Impala was at defendant's "baby mama's house" and Officers found the Impala at the location.

A cellphone was found during the search of the Impala. A Corporal testified the cellphone was present in the area of the shooting at the time of the shooting and contained Google searches of the victim's name. Further, the phone contained twenty-two accounts attributable to defendant and pictures of the defendant. The Corporal testified this information is consistent with defendant owning that cellphone.

During trial, defense counsel asked the witnesses about their identification of

the shooter and whether they were influenced by what others were saying. Specifically, defense counsel asked witnesses questions such as "Isn't it true that you had a lot of conversations with your family members about what had gone on on that day?" and "Isn't it true that you don't know who was in that car, you were just going by what people had been saying?" The witnesses each testified they saw defendant shoot the victim.

During closing arguments, defense counsel challenged the credibility of the witnesses' testimony, stating:

> Well, sometimes you find yourself in a position in life and you're trying to tell what happened, and then someone comes along . . . and that person begins to try to re-create in your mind what it is that they think that you saw.
>
> And what we have here is we have a situation where the recollection of that young man and the two ladies from that home is the result of all of that discussion and all that compacting, that energy and that emotion into a situation.

The trial court sustained the State's objection to that statement as being "information not in evidence." Later in closing argument, defense counsel said:

> And so what I'm saying to you, ladies and gentlemen, when you have a situation such as relying upon a person of very young age, relying on two people who are very, very emotionally and psychologically upset, searching for a why and an answer, in their own home, that it's dangerous to simply rely upon what is called eyewitness or direct testimony.
>
> . . . .
>
> Now, in this case, all of those witnesses who testified for

the State, the civilian witnesses, are interested in the outcome of this case. They're interested because they have this belief in their mind that this is what happened. And I say to you we challenge that idea in their mind because it is not truth and it's not–it's not evidentiary-based.

The State did not object to these subsequent statements.

On 11 April 2024, the jury returned a verdict of guilty to the charge of first-degree murder. The trial court sentenced defendant to life in prison without the possibility of parole. Defendant gave notice of appeal in open court.

## II.     Jurisdiction

Defendant appeals from the final judgment of the Superior Court pursuant to N.C.G.S. § 7A-27(b)(1) (2025). Accordingly, this Court has jurisdiction over defendant's appeal of right.

## III.     Standard of Review

"[T]he scope and control of [closing] arguments lies primarily within the discretion of the trial court." *State v. Watts*, 357 N.C. 366, 372 (2003). "A decision entrusted to a trial judge's discretion may be reversed only if it is manifestly unsupported by reason or so arbitrary that it could not have been a reasoned decision." *State v. Pickens*, 385 N.C. 351, 360 (2023) (citation omitted).

## IV.     Discussion

Defendant argues the trial court erred by sustaining the State's objection to a statement made by defense counsel during closing arguments. Defendant contends the error was prejudicial because it limited defendant's ability to question the

credibility of the State's eyewitnesses.

## A. Closing Argument Objection

Defendant contends that the trial court erred in sustaining the objection as information not in evidence because defense counsel's argument was based on record evidence.

Although a defendant's right to present a closing argument in a criminal case is constitutionally protected, it is neither "uncontrolled" nor "unrestrained." *State v. Fletcher*, 354 N.C. 455, 475 (2001). Thus, a trial court "is given great latitude in . . . limiting the scope of closing arguments." *Id.* (quoting *Herring v. New York*, 422 U.S. 853, 862 (1975)). During closing arguments, an attorney may, "on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue." N.C.G.S. § 15A-1230 (2025). Nevertheless, upon objection, it is the trial court's duty "to censor remarks not warranted by the law or evidence." *Watts*, 357 N.C. at 372.

Here, the trial court sustained the State's objection to statements made by defense counsel in closing arguments as "information not in evidence." There, defense counsel stated:

> Well, sometimes you find yourself in a position in life and you're trying to tell what happened, and then someone comes along . . . and that person begins to try to re-create in your mind what it is that they think that you saw.
>
> And what we have here is we have a situation where the recollection of that young man and the two ladies from that

home is the result of all of that discussion and all that
compacting, that energy and that emotion into a situation.

Defendant contends that record evidence supported defense counsel's

argument that witness recollections were based on "all of that discussion" and "that

energy and that emotion." Nevertheless, defendant has not cited to record evidence

that "someone [came] along" and "tr[ied] to recreate" in the witnesses' minds "what it

is that they think that [the witnesses] saw." Instead, the witnesses testified that they

identified defendant as the shooter with certainty. Therefore, sustaining the State's

objection was within the trial court's "great latitude" in limiting the scope of closing

arguments, and the trial court did not abuse its discretion in doing so.

## B. Prejudice

For error to be reversible, it must be shown to be prejudicial. *See State v.*

*Powell*, 306 N.C. 718, 721 (1982). Our prejudicial error standard is set by statute:

> A defendant is prejudiced by errors relating to rights
> arising other than under the Constitution of the United
> States when there is a reasonable possibility that, had the
> error in question not been committed, a different result
> would have been reached at the trial out of which the
> appeal arises. The burden of showing such prejudice under
> this subsection is upon the defendant.

N.C.G.S. § 15A-1443(a) (2025).

Furthermore, our Supreme Court held even if a trial court errs in sustaining

the State's objection to a defendant's closing argument, the error is harmless if the

"essence" of the argument is subsequently allowed after the objection was sustained.

*Watts*, 357 N.C. at 373; *see State v. Westbrooks*, 345 N.C. 43, 70 (1996).  In *Watts*, the trial court sustained the State's objection to a statement made in closing arguments on the basis that the challenged assertion was not in evidence.  *Id.* at 372.  Later, the defendant's counsel continued to assert the contents of the objected-to statement, and the State did not object.  *Id.*  The Court held that the defendant was not prejudiced because the essence of the testimony was subsequently allowed in the closing argument.  *Id.* at 373.

Here, like in *Watts*, the essence of the objected-to statement was later allowed to be presented to the jury without objection.  Defense counsel first argued that the witnesses' recollection was "the result of all of that discussion and all that compacting, that energy and that emotion into a situation."  After the state's objection was sustained, defense counsel subsequently argued that the witnesses' testimony was untrustworthy, noting the circumstances of the situation along with the discussions and familial relationships of the witnesses.  The essence of defense counsel's second argument was the same as the first.  Defense counsel noted the witnesses' ages, the circumstance of the situation, the witnesses' discussions, and the witnesses' familial relationships.  Thus, even if the trial court erred in sustaining the State's objection, the error was harmless because the essence of the objected-to statement was later presented to the jury without objection.

Furthermore, defendant has not shown prejudicial error.  The State presented substantial evidence of defendant's guilt at trial: (1) three eyewitnesses identified

defendant as the shooter in the Impala; (2) witnesses testified defendant's girlfriend was the driver of a second car following defendant; (3) the defendant's girlfriend told officers the location of the Impala; (4) a cellphone linked to defendant's accounts was found inside the Impala; and (5) the cellphone contained Google internet searches of the victim's name and the phone was determined to be present at the time and location of the shooting. In light of this evidence, there is not a reasonable possibility the jury would have reached a different result at trial.

Accordingly, we conclude defendant has failed to show the trial court erred in sustaining the State's objection to defense counsel's statement during closing arguments; but, assuming arguendo the trial court erred, defendant has failed to demonstrate prejudice.

## V. Conclusion

We conclude the trial court did not err by sustaining the State's objection in closing argument; therefore, defendant received a fair trial free from error.

NO ERROR.

Judge TYSON and WOOD concur.

Report per Rule 30(e).